IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY,
a Delaware corporation,

    Plaintiff/Counter-Defendant/Third Party Plaintiff,

vs.                                                                                  No. CIV 98-740 MV/RLP

JACQUELINE GARCIA,

    Defendant/Counter-Plaintiff,

and

RICK CHADWICK and ALLSTATE INSURANCE
COMPANY, an Illinois corporation,

    Third-Party Defendants/ Third Party Counter-Plaintiff (Chadwick).

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Motion to Intervene of Ricky Chadwick, as the Co-Personal Representative of the Estate of Robert Sheppard and the Estate of Ermelinda Sheppard, First Financial Trust Company as the Co-Personal Representative of the Estate of Robert Sheppard and the Estate of Ermelinda Sheppard, and as Trustee of the Robert Sheppard and Ermelinda Shriner's Children's Hospital Trust, and Cora Chadwick (hereinafter "Applicants in Intervention") filed on May 12, 1999 **[Doc. No. 79]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED.**

### **BACKGROUND**

Plaintiff, Burlington Northern and Santa Fe Railroad (BNSF) filed suit after a devastating collision that occurred on March 15, 1997, between a BNSF train and a vehicle driven by Defendant, Jacqueline Garcia (Garcia). Garcia's two young children were killed as a result of the collision and ensuing explosion. BNSF alleges to have suffered damages as a result of the collision.

Allstate Insurance Company insured Garcia at the time of the collision and the limits of insurance for damage to property were $50,000.00. BNSF alleged property damages in excess of $500,000.00 and was aware that Garcia was insured by Allstate as evidenced by its letter to Allstate dated June 9,1997. In June of 1998, Allstate offered the policy limits to BNSF. However, BNSF conditioned its acceptance of the policy limits on Garcia and the Estates of her children relinquishing any right or claim they may have against BNSF for wrongful death, personal injury or damages.

BNSF sent correspondence to Rick Chadwick (Chadwick), Garcia's stepfather setting forth its' requirements, prior to being offered the policy limits available under Garcia's policy. In May 1998, Chadwick consulted counsel regarding his and his family's rights. Soon after, BNSF Claims Director C.L. Merritt sent Chadwick a Mutual Release for Garcia to sign on her own behalf and for Chadwick to execute on behalf of the Estates. By that time, Chadwick and Garcia had retained counsel and had been advised not to execute the releases, which they communicated to BNSF. The settlement with Allstate then fell through.

On June 18, 1999, BNSF filed this action against Garcia for compensatory damages for property damage as well as damages for benefits paid to the train crew for their emotional injuries. Additionally, BNSF sought punitive damages against Garcia.

In response, Garcia filed a Counterclaim for the injuries and damages she suffered as a result of the collision as well as for the emotional distress she endured as a result of BNSF's conduct following the collision. Garcia's claims were compulsory under Fed.R.Civ.P. 13 and would have been waived unless filed as a Counterclaim contemporaneous with her Answer. The basis of Garcia's Counterclaim for intentional infliction of emotional distress included the letters sent to her family's household requesting the releases.

After receiving Garcia's Counterclaim, BNSF filed a Third-Party Complaint against Allstate and Chadwick, alleging that if any emotional distress had occurred as a result of the letters, it was due to Allstate's and/or Chadwick's acts and/or omissions. Chadwick filed a Counterclaim for his emotional distress suffered as a result of BNSF's conduct since the collision. On August 10, 1998, Applicants in Intervention Chadwick and First Financial Trust Company filed wrongful death actions in state court against BNSF and Rick Folley (Folley), the train engineer, on behalf of the Estates of Ermelinda Sheppard and Robert Sheppard. The state court case also included claims against BNSF and Folley by the children's natural grandmother, Applicant in Intervention Cora Chadwick, for her emotional distress.

After being served with the Complaint, BNSF filed a motion to stay the proceedings in state court. The motion was briefed and set for oral argument on February 17, 1999. After hearing oral argument and reviewing the briefs of the parties, the court granted BNSF's motion to stay in its entirety. Now, Applicants in Intervention seek leave to join their state court claims against BNSF in the present action.

**STANDARD OF REVIEW**

The rule for intervention is stated as follows:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional

right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.. . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. Rule 24.

## ANALYSIS

Plaintiff raises many reasons why Applicants' motion to intervene should be denied. First, Plaintiff asserts that both Applicants' motions to intervene, as a matter of right under Fed.R.Civ.P. Rule 24(a) and by permission under Rule 24(b), are untimely. Second, it states that Defendants' motion under 24(a) should be denied because the potential intervenors are adequately represented by existing parties and their counsel. Third, Plaintiff believes that intervention will unduly delay or prejudice the adjudication of its rights in this action. Fourth, Plaintiff asserts that Applicants failed to comply with the mandate of Rule 24(c), by failing to attach a pleading to their motion. Fifth, Plaintiff charges that federal jurisdiction would not exist, because there would no longer be diversity of citizenship between the parties. Finally, Plaintiff argues intervention should be denied because it would not adjudicate all related disputes in a single forum.

Plaintiff's primary contention is that the motion to intervene is untimely. The standard governing a Rule 24 motion to intervene is well-established. There are four pertinent factors in

determining timeliness of a motion to intervene: (1) length of time between when the proposed intervenors actually knew or reasonably should have known of their interest in case; (2) extent of prejudice that existing parties may suffer as result of proposed intervenors' failure to apply for intervention as soon as they actually knew or reasonably should have known of their interest in case; (3) extent of prejudice that proposed intervenors may suffer if motion is denied; and (4) existence of unusual circumstances militating for or against determination that the motion is timely. F.R.C.P. Rule 24.; *see Lucas v. McKeithen,* 102 F.3d 171, 171 (5th Cir. 1996). Plaintiff filed this suit on June 18, 1998, and Applicants filed their motion to intervene on May 12, 1999, approximately eleven months later. The discovery process has not been completed, and a contingent trial date was set for November or December of this year.

Turning to the first factor, Plaintiff states that one of the Applicants' attorneys, James Branch, notified BNSF of Branch's clients' intent to sue BNSF ten months ago. While this indicates that one or more of the Applicant's may have been aware of his or her interest in the subject action for some time, it does not alone justify denying intervention. The Court's inquiry as to the appropriateness of intervention is a flexible one, which focuses on particular facts and circumstances surrounding each application, and this type of intervention has to be measured by a practical rather than a technical yardstick. *See United States v. Perry County Bd. of Ed.*, 567 F.2d 277 (5th Cir. 1978); *see, also, United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826, (5th Cir.) certiorari denied 96 S.Ct. 1684, 425 U.S. 944, 481 L.Ed.2d 187 (1975); *Rigco, Inc. v. Rauscher Pierce Refsnes, Inc.*, 110 F.R.D. 180, N.D.Tex. 1986. In the present case, Applicants in Intervention have not ignored their claims against BNSF, but, rather, have actively pursued them in state court. It was only relatively recently that the state court proceedings were stayed. Moreover, eleven months may be a significant

amount of time but, considering how long it takes a case to proceed to trial, it is not a huge gap. Therefore, although there has been a eleven month lapse between the Applicants' knowledge of their interest in the case and this actual motion to intervene, the Court does not find the length of time, standing alone, too great to foreclose intervention at this time.

Next, Plaintiff asserts that the motion to intervene will prejudice the existing parties because several witnesses have already been deposed. As the Applicants acknowledge in their motion, the scope of discovery may be expanded due to the intervention claims. However, the exchange of information and documents would not be materially affected as to what has been produced to date. Further, although depositions may need to be supplemental they will not need to be redone. Discovery is still open and ongoing and the discovery deadline has not passed. The Court therefore does not believe the existing parties will be unduly prejudiced.

Further, turning to the potential prejudice to the Applicants, not all of the issues of liability and damages which the Applicants seek to raise are adequately represented by the present parties. Specifically, there is a potential conflict of interest between the estates of the deceased children and Defendant Garcia, who may be legally responsible for the accident. In addition, Cora Chadwick's claim for emotional distress is not represented in the present action at all, and if a jury rejects or accepts Garcia or Ricky Chadwick's claims for intentional infliction of emotional distress, the result will not be determinative of Cora Chadwick's claim or the claims of the estates. Accordingly, the Applicants would suffer undue prejudice if the Court denies their motion to intervene.

In regards to the fourth factor in determining timeliness, there are no unusual circumstances for or against determination that the motion to intervene is timely.

In sum, the Court does not find the motion to intervene untimely under the four determining factors. First, the length of time between the initial action and the motion to intervene is not exceedingly great. Second, Plaintiff will not be prejudiced because the Applicants waited eleven months to apply for intervention. Third, Applicants would suffer unnecessary prejudice if they are not allowed to intervene. And fourth, there are no unusual circumstances militating against determination that the motion is timely. F.R.C.P. Rule 24.; *see Lucas v. McKeithen,* 102 F.3d 171, 171 (5th Cir. 1996).

Next, Plaintiff asserts that Applicants failed to meet the requirements of Rule 24(c), which states "a person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defenses for which the intervention is brought." Fed.R.Civ.P Rule 24(c). Although Applicants failed to attach a pleading to their motion which would set forth the claims on which they are seeking to intervene in this action, the Supreme Court has not found such pleadings crucial in granting a motion to intervene. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 57, 117 S.Ct. 1055, 1064 (1997). Applicants assert that the failure to attach the pleading was inadvertent and that the complaint for the instant action is identical to the complaint field in state court with the exception that the Applicants do not intend to join any claims against Woody Hunter or Folley, (the engineers of the train), and Cora Chadwick would seek to add a claim for loss of consortium. Thus the Court finds that Applicants have cured this technical defect and that Plaintiff has not been prejudiced.

Plaintiff is also concerned that there would no longer be federal jurisdiction over this case if intervention is granted, because, according to Plaintiff, Applicants seek to add a new adverse party,

Woody Hunter, a New Mexico resident, which would defeat diversity. However, according to Applicant's Reply in Further Support of Motion to Intervene **[Doc. No. 82]**, they do not intend to join any claims against Hunter. Therefore, Plaintiff's concern does not appear valid. Federal subject matter jurisdiction will still exist if the Applicants are allowed to intervene.

Plaintiff is also apprehensive that all the disputes will not be resolved in one forum because of the pending suit in state court where the Applicants as plaintiffs intend to maintain claims against Folley for emotional distress. The resolution to this dilemma is simple: the claims against Folley may be joined in the current action and the entire case remanded to state court. As noted, Plaintiff resists this course of action. That being the case, Plaintiff will not now be heard to complain that Folley is not a party to this case.

Lastly, Plaintiff is also concerned that by allowing Applicants to intervene confusion will arise as to who are the correct Plaintiffs in this action. If Applicants do intervene here they have stated that BNSF is the correct Plaintiff in this case. However, if there is jury confusion as to who is the correct Plaintiff, it is not sufficiently weighty enough to deny the motion to intervene given the prejudice the Applicants in Intervention are likely to suffer if the motion is denied.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the Applicants' Motion to Intervene **[Doc. No. 79]** is hereby **GRANTED**.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE