IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY,

    Plaintiff/Counter-Defendant/Third-Party Plaintiff,

vs.                                                                                                       No. CIV 98-740 MV/RLP

JACQUELINE GARCIA,

    Defendant/Counter-Plaintiff,

ALLSTATE INSURANCE COMPANY
and RICKY CHADWICK,

    Third-Party Defendants,

and

CORA CHADWICK, Individually, RICKY CHADWICK,
as the Co-Personal Representative of the ESTATE OF
ROBERT SHEPPARD and the ESTATE OF ERMELINDA
SHEPPARD, and FIRST FINANCIAL TRUST COMPANY,
as the Co-Personal Representative of the ESTATE OF
ROBERT SHEPPARD, and the ESTATE OF ERMELINDA
SHEPPARD, and as TRUSTEE of the ROBERT SHEPPARD
and ERMELINDA SHEPPARD SHRINER'S CHILDREN
HOSPITAL TRUST,

    Plaintiffs-in-Intervention,

vs.

THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY,

    Defendant-in-Intervention,

vs.

JACQUELINE GARCIA, RICKY CHADWICK,
and ALLSTATE INSURANCE COMPANY,

    Third-Party Defendants on Complaint in Intervention.

**AMENDED MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant/Counter Plaintiff Jacqueline Garcia's; Third-Party Defendant/Counter-Plaintiffs Rick Chadwick's; and Plaintiffs' in Intervention [The Parties] Motion to Strike Plaintiff/Counter-Defendant BNSF's Expert Witness, Gary Wolf, for Failure to Comply With Federal Rule of Civil Procedure 30(b)(5) and 34(a) & (b), filed October 7, 1999 **[Doc. No. 178]**. In the alternative the Parties move the Court to exclude the evidence of the expert pursuant to FED. R. EVID. 702. The Court, having considered the pleadings, relevant law, and being otherwise fully informed, finds that the motion is not well taken and will be **DENIED**.

## BACKGROUND

Plaintiff, Burlington Northern and Santa Fe Railroad (BNSF) filed suit after a devastating collision that occurred on March 15, 1997, between a BNSF train and a vehicle driven by Defendant Jacqueline Garcia (Garcia). Garcia's two young children, Ermelinda Sheppard and Robert Sheppard, were killed as a result of the collision and ensuing explosion. Garcia filed a counterclaim alleging that BNSF was negligent, *inter alia*, for failing to provide proper warning and failing to mark the area of the railroad tracks. BNSF seeks to provide evidence on this issue through their expert witness Gary Wolf.

**I.   MOTION TO STRIKE THE TESTIMONY OF GARY WOLF UNDER FED. R. CIV. P. 37**

   **A.   Legal Standard of Review**

Federal Rule of Civil Procedure 37 authorizes a court to issue sanctions against a party who fails to comply with discovery obligations. Rule 37(c) provides, in relevant part, that

> "[a] party that *without substantial justification* fails to disclose information required by Rule 26(a) or 26(e)(1)...shall not, *unless such failure is harmless*, be permitted to use as evidence at trial, at hearing, or on any motion any witness or information not so disclosed," (emphasis added).

The trial court has broad discretion in determining whether a discovery violation under Rule 26(a) is justified or harmless. *Woodworker's Supply, Inc. v. Principal Mut. Life*, 170 F.3d 985, 993 (10th Cir. 1999). In exercising its discretion the court should consider the following factors: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the party's bad faith and willfulness in failing to make the required disclosures. *Id.*

**B.     Analysis**

Applying these principals to the present case, the Court finds that although the expert witness failed to provide the Parties with certain required information, the harsh sanction of excluding the testimony is not justified under the circumstances.

The parties claim specifically that the expert witness, Gary Wolf, failed to comply with the deposition notice, which required Mr. Wolf to produce at the time of deposition (1) copies of prior deposition testimony he had given in the past four years; (2) copies of any publications authored by him during the past ten years which related to his expert witness report; and (3) copies of all billing statements for work produced on this matter. On June 21, 1999, counsel for the Parties wrote a letter to counsel for BNSF underscoring the importance of obtaining the documents requested in advance of the deposition. Mr. Wolf did not appear for his initial deposition scheduled for July 27, 1999, after providing a questionable excuse. Mr. Wolf's deposition was finally taken on August 10, 1999. Mr. Wolf did not provide the required submissions until September 23, 1999, after this motion was filed.

3

The Parties argue that they are prejudiced by Mr. Wolf's failure to comply with the deposition notice. Specifically, the Parties state that they are unable to cross-examine Mr. Wolf regarding his previous deposition testimony that was potentially damaging to his present testimony. The Parties further argue that although some prior deposition testimony has been provided, discovery is now closed and the Parties are without an opportunity to examine Mr. Wolf on these matters prior to trial. At the time of his deposition Mr. Wolf testified that he had not provided copies of the depositions because of the sheer volume, but he did offer a list of the depositions. Mr. Wolf provided no reason for his failure to provide copies of his publications. Upon the filing of this motion, BNSF provided the requested material to the Parties. BNSF offers an affidavit of Mr. Wolf asserting that he did not keep copies of his depositions on hand, and that he was unaware that he was required to invest the time and effort necessary to locate these hard-to-find materials.

The Court is troubled by BNSF's failure to comply with its discovery obligations concerning Mr. Wolf. In this case, BNSF attempts to deflect responsibility by arguing that Mr. Wolf was not aware that he needed to comply with the discovery requirements. This argument is not well taken. It is the responsibility of BNSF to make certain that their experts are prepared for deposition, including being prepared to turn over all relevant documents. Counsel for BNSF was served with a copy of the deposition notice, which set forth the required submissions. Counsel for BNSF was also sent a letter on June 10, 1999 reiterating the need for the documents. After being provided with multiple notices, BNSF cannot now argue that its expert was not aware of the need to disclose.

Despite BNSF's discovery violation, the Court finds that there is not sufficient prejudice to warrant the extreme sanction of striking the expert witness testimony. BNSF has now cured

4

the defect by providing the Parties with the required disclosures. Trial has been rescheduled for late January, 2000, thereby giving the Parties ample time to prepare adequate cross-examination of Mr. Wolf's anticipated trial testimony. For these reasons, the extreme sanction of precluding Mr. Wolf's testimony is not appropriate. Despite this ruling, the Parties are not left without a remedy. Under FED. R. CIV. P. 37(d) the Parties are entitled to reasonable expenses, including attorneys fees, caused by BNSF's failure to respond to a request for document inspection. Pursuant to FED. R. CIV. P. 37(d) the Court finds that the Parties made a good faith attempt to confer with BNSF in an effort to obtain the documents prior to filing this motion. Accordingly, the Court hereby awards reasonable expenses, including attorney fees, arising out of BNSF's failure to provide the requested documents. The Court also holds that the Parties shall have an opportunity to re-depose Mr. Wolf at BNSF's expense. BNSF shall pay Mr. Wolf for his time and pay the Parties attorney's fees incurred for the second deposition.

**II.    ADMISSIBILITY OF WOLF'S TESTIMONY UNDER FED. R. EVID. 702 AND *DAUBERT***

The Parties also move the Court to exclude the expert testimony of Mr. Wolf under FED. R. EVID. 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Specifically, the Parties argue that Mr. Wolf has no training, knowledge or specialized experience in human factors which would allow him to provide expert opinions on issues relating to the adequacy and placement of signs, warnings or barriers. According to the Parties, opinions regarding the adequacy and placement of signs requires background not only in engineering, but also in psychological and behavioral science, as well as training in the effect of language, lettering and pictures in signs.

### A. Legal Standard of Review

The trial court assumes a gatekeeping function in determining the admissibility of all expert testimony. *Kuhmo Tire Company*, 526 U.S. 137 (1999). Pursuant to FED. R. EVID. 702, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify if scientific, technical or other specialized knowledge will assist the trier of fact to understand evidence or determine a fact in issue. In order for expert testimony to be admissible, the trial court must determine whether the proffered evidence is reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. at 589. A reliable expert opinion must be based on scientific, technical, or other specialized knowledge, rather than belief or speculation. *Id* at 590. The Supreme Court set forth a nonexclusive list of factors courts should consider in deciding whether the proposed testimony is scientifically reliable including: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the rate of error of the technique or theory; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted within the relevant scientific community. *Id.* at 591-95. The test of reliability is flexible and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case. *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137.

### B. Analysis

The Court finds that the testimony of Gary Wolf is both reliable and relevant and therefore admissible under FED. R. EVID. 702 and *Daubert*. Mr. Wolf intends to testify that the "No Trespassing" sign in front of the BNSF depot was "obvious and appropriately placed", gave adequate warning of potential hazards and is visible from a motor vehicle at night. According to Mr. Wolf, the language and dimensions of the sign is consistent with the type of signs used

widely throughout the BNSF system. It is Mr. Wolf's opinion that fencing or barriers are not necessary to keep trespassers out and can impede operations at the site.

The Parties first challenge Mr. Wolf's qualifications to testify as an expert regarding the adequacy and placement of the warning signs on BNSF property on the basis that Mr. Wolf is not an expert in "human factors" including psychology and behavioral sciences. The Court believes that Mr. Wolf is qualified to provide such testimony under FED. R. EVID. 702 based upon his specialized knowledge of train operations and his experience in evaluating train accidents. *See United States v. Kunzman*, 54 F.3d 1522, 1530 (10th Cir. 1995) (experience or knowledge can qualify a witness to give expert testimony). The record establishes that Mr. Wolf has extensive experience regarding all factors involved in railroad operations, including injury claims arising from those operations. Mr. Wolf was educated as an electrical engineer and industrial manager. His post-graduate education includes a seminar on accident reconstruction. Mr. Wolf has worked for 23 years in the field of train operations. Thirteen years of this experience included work on cause and prevention of derailments, crossing accidents and injury claims. Presently Mr. Wolf operates a railway consulting firm focusing on accident and derailment analysis. A number of the cases Mr. Wolf has worked on have involved disputes as to the adequacy of signs. Mr. Wolf's background also includes work concerning human's perception of light, sound and motion. Mr. Wolf intends to offer testimony regarding visibility and perception, the ability of the human eye to perceive detail at night, and the role color contrast plays in visual acuity, among other issues. Mr. Wolf bases this testimony on work he has in the past, and also on his own independent studies of the accident scene in this case. According to Mr. Wolf, he is well versed in the "scientific principles and standards regarding the visibility and perception of signs observed from a car at night." Moreover, through his work, Mr. Wolf has become familiar with the circumstances under

which the public at large us adequately warned of the dangers of railroad operations. The Court is not convinced by the Parties' argument that one needs to be an expert in "human factors" to be able to testify as to the adequacy and placement of signs. However, to the extent "human factors" is relevant, Mr. Wolf has also conducted work regarding the involvement of human factors in railroad accidents.

The Parties raise concerns that Mr. Wolf is not trained in the different properties of "signage," including the effect of language, lettering and pictures in communicating messages from a sign. While Mr. Wolf may not be the optimal witness to speak to the cognitive factors that govern human perception of warning signs, these concerns go to the weight rather than the admissibility of Mr. Wolf's testimony. *See, Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991) (mechanical engineer's lack of specialization in consumer expectations affects the weight, rather than admissibility, of his testimony regarding warnings.) The Court is satisfied that Mr. Wolf has sufficient background, training, knowledge and experience as both an engineer and a railroad consultant to testify as an expert regarding what constitutes sufficient warning in the context of railroad operations. *See United States v. Kunzman*, 54 F.3d at 1530.

The Parties have not raised any challenges to the methodology used by Mr. Wolf in reaching his conclusion that the "No Trespassing" sign in front of the BNSF depot is visible from a car at night. However, the Court, in its gatekeeping function pursuant to *Daubert*, must examine whether this testimony is derived from scientific, technical, or other specialized knowledge. Due to the flexible nature of the *Daubert* approach, the Court need not exhaust each of the *Daubert* factors in determining the reliability of Mr. Wolf's testimony. *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137 (1999). It is sufficient under *Daubert* that Mr. Wolf's opinion is based upon principles widely accepted in the scientific community. According to Mr. Wolf, the human

eye can identify a detail that subtends an arc of 0.15 degrees.  When viewed from a distance of 25 feet, this equates to being able to recognize letters of approximately 0.8 inches.  Comparatively, the height of the smallest letters on the "No Trespassing" sign was two inches, 2/12 times the size of letters typically recognizable by humans at 25 feet distance.  Mr. Wolf further opines that the contrasting in letters on a sign is directly related to its visibility.  In this case, the letters on the sign were black against a white background, similar to black letters on a white piece of paper.  The contrast value of such a piece of paper is very high at 88 percent.  By analogy, Mr. Wolf believes that the contrast value of the "No Trespassing" sign was also very high.  The Court is satisfied that Mr. Wolf uses scientifically valid and reliable methods in reaching his opinion that the "No Trespassing" is visible from a car at night.

In conclusion, the Court finds that Mr. Wolf has sufficient training, background, knowledge and experience to give reliable testimony regarding the adequacy and placement of signs, warnings and barriers in the context of railroad operations.  The Court further finds that such testimony will assist the fact finder in determining whether the "No Trespassing" sign placed near the railroad depot was adequate.  Based on these findings the Court holds that Gary Wolf testimony is admissible under FED. R. EVID. 702 and *Daubert*.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant/Counter Plaintiff Garcia's; Third-Party Defendant/Counter-Plaintiffs Chadwick's; and Plaintiffs in Intervention's Motion to Strike or Exclude Plaintiff/Counter-Defendant BNSF's Expert, filed October 7, 1999 **[Doc. No. 178]**, is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff/Counter-Defendant BNSF shall pay all reasonable expenses including attorney's fees caused by BNSF's failure to comply with its discovery obligations with respect to the expert witness. BNSF shall also make Mr. Wolf available for an additional deposition if the Parties so require. BNSF shall be responsible for the costs of this deposition, as well as the attorney's fees and Mr. Wolf's time.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE

Attorney for Plaintiff/Counter Defendant BNSF:
Clifford K. Atkinson
John Thal

Attorney for Defendant/ Third-Party Plaintiff Garcia:
Brian K. Branch
James A. Branch Jr.