IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

00 JAN 21 PM 4:08

THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY,

 Plaintiff/Counter-Defendant/Third-Party Plaintiff,

vs.              No. CIV 98-740 MV/RLP

JACQUELINE GARCIA,

 Defendant/Counter-Plaintiff,

ALLSTATE INSURANCE COMPANY
and RICKY CHADWICK,

 Third-Party Defendants,

and

CORA CHADWICK, Individually, RICKY CHADWICK,
as the Co-Personal Representative of the ESTATE OF
ROBERT SHEPPARD and the ESTATE OF ERMELINDA
SHEPPARD, and FIRST FINANCIAL TRUST COMPANY,
as the Co-Personal Representative of the ESTATE OF
ROBERT SHEPPARD, and the ESTATE OF ERMELINDA
SHEPPARD, and as TRUSTEE of the ROBERT SHEPPARD
and ERMELINDA SHEPPARD SHRINER'S CHILDREN
HOSPITAL TRUST,

 Plaintiffs-in-Intervention,

vs.

THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY,
 Defendant-in-Intervention,

vs.

JACQUELINE GARCIA, RICKY CHADWICK,
and ALLSTATE INSURANCE COMPANY,
 Third-Party Defendants on Complaint in Intervention.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff/Counter-Defendant BNSF's Third Motion in Limine to exclude evidence of excessive speed, filed October 7, 1999 [**Doc. No. 166**]; Fourth Motion in Limine, filed January 4, 2000 [**Doc. No. 251**]; Fifth Motion In Limine filed January 4, 2000 [**Doc. No. 253**]; Sixth Motion in Limine filed January 4, 2000 [**Doc. No. 255**]; and Seventh Motion in Limine filed January 4, 2000 [**Doc. No. 257**]. Also before the Court is Defendant/Plaintiffs-In-Intervention, Garcia, *et. al.*'s First Motion in Limine to exclude statements made to Allstate Insurance, payments made by Allstate, and a police diagram, filed September 20, 1999 [**Doc. No. 148**].

The Court, having considered the pleadings, relevant law, oral arguments and being otherwise fully informed, finds that: BNSF's Third Motion in Limine [**Doc. No. 166**] is well taken and will be **GRANTED**; BNSF's Fourth Motion in Limine [**Doc. No. 251**] is well taken and will be **GRANTED**; BNSF's Fifth Motion in Limine [**Doc. No. 253**] is well taken and will be **GRANTED**; BNSF's Sixth Motion in Limine [**Doc. No. 255**] is not well taken and will be **DENIED**; BNSF's Seventh Motion in Limine [**Doc. No. 257**] is not well taken and will be **DENIED**; and, Garcia, *et. al.*'s First Motion in Limine [**Doc. No. 148**] is well taken in part and will be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiff, Burlington Northen and Santa Fe Railroad (BNSF) filed suit after a devastating collision that occurred on March 15, 1997, between a BNSF train and a vehicle driven by

Defendant Jacqueline Garcia (Garcia). Garcia's two young children, Ermelinda Sheppard and Robert Sheppard, were killed as a result of the collision and ensuing explosion. Garcia filed a counterclaim alleging that BNSF was negligent, *inter alia*, for failing to provide proper warning, failing to mark the area of the railroad tracks, and failing to stop the train as soon as Garcia's vehicle was noticed on the tracks by the BNSF train conductors.

I. **BNSF'S THIRD MOTION IN LIMINE TO EXCLUDE EVIDENCE OF THE TRAIN'S EXCESSIVE SPEED**

In its third motion in limine, BNSF seeks to exclude evidence that the BNSF westbound train was traveling at an excessive speed prior to the collision. In a January 7, 2000 Memorandum Opinion and Order, this Court held that Garcia, *et. al.*'s claims of negligence based on excessive speed were federally preempted by the Federal Railroad Safety Act. *See CSX Transportation v. Easterwood*, 507 U.S. 658 (1993). The Court asked for additional briefing to determine whether Garcia, *et. al.* could state a claim under the local safety hazard exception provided for in § 434 of the FRSA. The Court now finds that Garcia, *et. al.*'s claims of negligence based on excessive speed are preempted notwithstanding the local safety hazard exception. As the Supreme Court stated in *CSX v. Easterwood*, the FRSA speed limits were adopted after "the hazards posed by track conditions were taken into account." *Id.* at 674. The Supreme Court rejected an argument that "common-law speed restrictions are preserved by the second saving clause of § 434, under which a 'State may . . . continue in force an additional or more stringent law . . .'" on the grounds that such an interpretation of the local safety hazard exception would undermine the preemptive effect of the Federal Railroad Safety Act. *Id.* at 675.

In accordance with the Supreme Court's ruling in *CSX v. Easterwood*, this Court finds that Garcia, *et. al.*'s claims of common-law negligence based upon excessive speed cannot stand under the Federal Railroad Safety Act. As such, the Court grants BNSF's motion in limine to exclude evidence of speed as it relates to any claims of negligence based on excessive speed. However, the Court expressly limits its ruling to claims of negligence based on excessive speed. Evidence of the speed of the trains is admissible for other purposes, including, but not limited to, proving that given the speed of the trains, BNSF was under a duty to provide additional warnings, or to report the vehicles once they were discovered. As such, evidence of the speed of the BNSF trains may be relevant to Garcia, *et. al.*'s other claims of negligence.

## II. BNSF'S FOURTH MOTION IN LIMINE TO EXCLUDE EVIDENCE OF A SEPARATE DUTY OWED TO ERMELINDA SHEPPARD AND ROBERT SHEPPARD

In its Fourth Motion in Limine, BNSF seeks to exclude any evidence of a separate duty of care owed to Ermelinda and Robert Sheppard, as distinguished from the duty of care owed to Jacqueline Garcia. In its January 7, 2000 Memorandum Opinion and Order, this Court held that Jacqueline Garcia was, as a matter of law, a trespasser on BNSF's property the night of the collision. This holding extends to her children, Ermelinda and Robert Sheppard, who were in Garcia's exclusive control and care. As such, any duty of care owed to Garcia will be the same duty of care owed to the deceased children, Ermelinda and Robert Sheppard. On this ground, the Court grants BNSF's motion to exclude any evidence of a separate duty of care owed to Ermelinda and Robert Sheppard.

### III. BNSF'S FIFTH MOTION IN LIMINE TO EXCLUDE EVIDENCE OF THE FIRST FINANCIAL TRUST AND ITS ASSOCIATION WITH SHRINER'S CHILDREN'S HOSPITAL

In its Fifth Motion in Limine, BNSF seeks to exclude evidence of the First Financial Trust and its association with Shriner's Children's Hospital. Under the provision of a trust agreement, Shriner's Children's Hospital is the beneficiary of half of any damages recovered by the Estates in this case. BNSF seeks to exclude this information pursuant to FED. R. EVID. 401 and 403. The Court agrees that the evidence is both irrelevant and unduly prejudicial. As such, the evidence should be excluded. The Court however, will allow Garcia, *et. al.* to introduce the evidence to rebut any contention that Garcia stands to gain financially from any award to the Estates. As such, this evidence is permissible only for rehabilitation in the event that Garcia is impeached for bias or financial interest. If Garcia, *et. al.* seek to use the evidence for rehabilitation, they are also permitted to introduce the trust agreement into evidence, if it is otherwise admissible under the Federal Rules of Evidence.

### IV. BNSF'S SIXTH MOTION IN LIMINE TO EXCLUDE EVIDENCE OF BNSF'S FINANCIAL CONDITION AND EVIDENCE RELATED TO PUNITIVE DAMAGES

In its Sixth Motion in Limine, BNSF seeks to exclude evidence of BNSF's financial condition and any reference to punitive damages against BNSF on the grounds that such evidence is irrelevant, unduly prejudicial and not supported by the facts. Counsel for Garcia, *et. al.* have stipulated that it will not seek to introduce such evidence without first seeking guidance from the Court. On this ground, the Court will deny BNSF's motion and permit Garcia, *et. al.* to establish a foundation at trial for such evidence. The Court notes that it instructed the parties to

confer with each other prior to submitting additional motions. Had the Court's instruction been followed, BNSF would have known prior to following this motion, that counsel for Garcia, *et. al.* would not seek to introduce such evidence without leave of the Court.

## V. BNSF'S SEVENTH MOTION IN LIMINE TO EXCLUDE EVIDENCE OF EVIDENCE AS TO THE VALUE OF LIFE, OR ELEMENTS TO CONSIDER IN DETERMINING THE VALUE OF LIFE

In its Seventh Motion in Limine, BNSF seeks to exclude any expert economist opinions on the value of life of Ermelinda and Robert Sheppard, or the elements to be considered in determining the value of life, on the grounds that hedonic damages are not permitted under New Mexico's Wrongful Death Statute. Garcia, *et. al.* have stipulated that it does not seek to elicit any expert opinion that sets forth a figure on the value of life. Rather, Garcia, *et. al.* seek to have the expert economist offer opinions on the various methodologies, factors and elements used to determine present day value and will discuss generally what the concepts include. Once again, had counsel for BNSF followed the Court's instruction to confer with opposing counsel, this motion in limine could have been avoided. As such, the Court denies BNSF's motion in limine. The Court will allow such testimony to be intorduced, provided - of course - the proper foundation is laid at trial.

The Court also holds, contrary to the assertion of BNSF, that hedonic damages are permitted under the applicable portion of the New Mexico Wrongful Death Act, NMSA § 41-2-4. In *Romero v. Byers*, the New Mexico Supreme Court analyzed the applicability of non-pecuniary damages to the New Mexico Wrongful Death Act. 117 N.M. 423 (1994). The Court expressly noted that its holding pertained to the question of whether "the New Mexico Wrongful

Death Act, NMSA 1978 §§ 41-2-1 through 41-2-4...[permits a party] to introduce expert testimony by an economist for establishing a non-pecuniary value of life itself of the decedent and be awarded damages for non-pecuniary value of decedent's life itself." *Id.* at 427. The Court answered this query in the affirmative. BNSF attempts to distinguish *Romero* by arguing that the case was limited to NMSA §§ 41-2-2, 41-2-3, while the present case involves § 41-2-4, the exclusive remedy for wrongful death resulting from a common carrier. Although the Supreme Court's discussion in *Romero* focused on §§ 41-2-1 and 41-2-3, the question before the Court involved NMSA § 41-2-4 as well. Accordingly, the *Romero* Court's holding clearly included and contemplated all portions of the New Mexico Wrongful Death Act from §§ 41-2-1 through 41-2-4. Furthermore, in *Sena v. New Mexico State Police*, the New Mexico Court of Appeals, interpreting *Romero*, held that "it is clear that New Mexico permits proof of nonpecuniary damages resulting from the loss of enjoyment of life in tort actions involving permanent injuries." 119 N.M.471, 478 (Ct. App. 1995). Both *Romero* and *Sena* lead this Court to conclude that hedonic damages are permissible in the instant case, and expert testimony regarding the elements used to determine present day value should likewise be permitted.

## VI. GARCIA, *ET. AL.*'S FIRST MOTION IN LIMINE TO EXCLUDE STATEMENTS MADE TO ALLSTATE INSURANCE

In its First Motion in Limine Garcia, *et. al.* seek to exclude (1) police diagrams and police testimony regarding the accident scene; (2) evidence of payments made by Allstate to the Estates;[1] (3) statements made by Rick Chadwick to an Allstate claims adjuster after the

---

[1] Although the Court orally ruled on the issue of the Allstate Payments on January 7, 2000, the ruling appears to be the subject of some confusion. Given the significance of this

7

collision;[2] and (4) certain statements made by Jacqueline Garcia to an Allstate Insurance claims adjuster three days after the collision. The Court will address each of these issues in turn.

A.  **Police Diagrams and Police Testimony**

Garcia, *et. al.* seek to exclude certain police diagrams and the testimony of Officer Garley and Officer Noah, who responded to the accident scene. Officer Garley constructed a police diagram of the accident scene which places Garcia's vehicle north of the storage track immediately prior to the collision. Officer Garley based this diagram on physical measurements he took and observations made after the collision. Officer Garley intends to testify regarding this diagram and his observations of the accident scene. Officer Noah assisted Officer Garley in taking measurements of the accident scene and is expected to provide similar testimony. Garcia, *et. al.* seek to exclude the police diagram on the grounds that it is not supported by the evidence in the case and is contrary to the statements provided by the eyewitnesses to the collision. Garcia, *et. al.* further seek to exclude the testimony of Officer Garley and Officer Noah on the grounds that they were not disclosed as experts and are not qualified to give expert opinions in this case.

The Court is not persuaded by either argument. The evidence indicates that Officer Garley based the diagram on his investigation of the accident scene and physical findings he had made. Upon reviewing Officer Garley's affidavit, it appears that the diagram is based upon his

---

evidence, the Court will clarify its rulings in this written order.

[2] The issue of Rick Chadwick's statements was not initially raised in the Motion In Limine, but has arisen through the briefing process. As such, the Court will address the issue in this written order.

8

perceptions, and will assist the jury in determining the events preceding the collision and, as such, is permissible lay witness opinion testimony under FED. R. EVID. 701. Garcia, *et. al.*'s argument that Officer's Garley's diagram is contradictory to the eyewitnesses accounts goes to the weight of the evidence, rather than its admissibility. On these grounds, the Court will permit the diagram to be admitted into evidence if the proper foundation is laid that the diagram was based upon Officer Garley's and Officer Noah's personal observations, and that Officer Garley is trained in such accident reconstruction. Furthermore, the Court does not find that Officer Garley and Officer Noah are testifying as expert witnesses, but rather are testifying as lay witnesses pursuant to FED. R. EVID. 701. *See, e.g. U.S. v. Meyers*, 972 F.2d 1566, 1576-77 (11th Cir. 1992) (police officer responding to the scene permitted to testify as lay witness based upon his personal observation of crime scene and years of experience and training). Accordingly, Garcia, *et. al.*'s argument that Officer Garley and Officer Noah were not timely disclosed as experts fails. However, to prevent unfair surprise at trial, the Court will limit the testimony of Officer Garley and Officer Noah to the subject matter contained in the police report and police files which were available to both parties during the discovery process.

### B. Evidence of Payments Made By Allstate to the Estates

Garcia, *et. al.* seek to exclude evidence of payments made by Allstate Insurance to the Estates, of which Garcia was the primary beneficiary. BNSF seeks to introduce these statements to show Garcia's negligence, as well as her bias in this case. Under FED. R. EVID. 408, evidence of compromise negotiations and settlements is not admissible to show negligence or fault. Furthermore, pursuant to FED. R. EVID. 411, evidence of insurance is not permissible to prove

fault. Accordingly, evidence of the payments by Allstate are not admissible to show Garcia's liability or fault in the collision. Although, evidence of settlements is permissible to prove bias or prejudice under FED. R. EVID. 408, the Court finds that the probative value of this evidence is outweighed by the prejudicial impact, and therefore the evidence should be excluded pursuant to FED. R. EVID. 403. To the extent that BNSF seeks to show Garcia's bias because she has a financial interest in damages awarded to the Estates, this argument can be made without reference to the past payments by Allstate. BNSF can inquire about Garcia's present interest in the outcome of the case. However, to inquire into past insurance payments would risk exposing the jury to the impermissible inference that Garcia received those payments because she was at fault in the collision. Furthermore, such evidence may lead the jury to conclude that Garcia has already been adequately compensated for the collision. On these grounds, all evidence of the payments made by Allstate shall be excluded.

### C. Statements Made By Rick Chadwick to Allstate

BNSF seeks to introduce statements made by Rick Chadwick to Allstate Insurance. According to BNSF, the statements were made by Chadwick in his capacity as personal representative of the Estates, and as such are admissions of a party opponent under FED. R. EVID. 801(d)(2)(A). Although the specific statements have not been identified, BNSF states that the statements were made from a period ranging from a couple of days following the collision, to the present. The Court has several concerns about the admissibility of such statements. As an initial matter, the Court is not convinced that the statements were made by Rick Chadwick acting on behalf of the Estates. To the extent that BNSF seeks to admit these statements as non-hearsay

pursuant FED. R. EVID. 801(d)(2)(A), BNSF will have an opportunity at trial to lay a foundation that Chadwick was in fact making these statements as a representative of the Estates. *See Mackey v. Burke*, 751 F.2d 322, 326, n.2 (10th Cir. 1984) (testimony by plaintiff of conversation he had with defendant's agent was admissible when agency relationship was established by independent evidence.) An additional concern the Court has is that these statements may have been made during the course of settlement negotiations between the Estates and Allstate, and as such, could be excluded under FED. R. EVID. 408. Whether the statements were made during the course of settlement negotiations depends on the nature, timing and context of the statements. Without having such information available, it is impossible for the Court to make a ruling as to this issue at this time. Finally, the Court is concerned that some of the statements made by Chadwick may constitute double hearsay. For example, to the extent that Chadwick relied on information provided by third parties in making his statements to Allstate, such statements would constitute hearsay, unless they fall under an exception. Again, without the statements before the Court it is impossible to make a ruling as to their admissibility under any hearsay exceptions. BNSF will have an opportunity at trial to lay the foundation for their admission, and Garcia, *et. al.* can raise any objections at that time.

### D. Statements Made By Jacqueline Garcia to Allstate

Garcia, *et. al.* seek to exclude certain statements made by Garcia to Allstate Insurance three days after the collision. In the course of this statement, Garcia described the events occurring prior to the collision, and stated that she felt some responsibility for the collision because "I shouldn't have gone. I should gave just went home and waited for them there." Some

portion of Garcia's statements were recorded and transcribed, while other portions of Garcia's statements were given "off the record". Garcia, *et. al.* seek to exclude evidence of Garcia's statement on the grounds that it constitutes hearsay, is inadmissable evidence under FED. R. EVID. 408, and is unduly prejudicial.

The Court is not persuaded by Garcia, *et. al.*'s arguments. Under FED. R. EVID. 801(d)(2) a statement or admission made by a party opponent is not considered hearsay. *See U.S. v. Lambert*, 995 F.2d 1006, 1008 n. 1 (10th Cir. 1993). Contrary to the arguments made by both parties, there is no requirement under the Federal Rules of Evidence that the admissions made by a party opponent be antagonistic to the party's position at trial. As such, the Court will not engage in an analysis of the contradictions in Garcia's statements and her current position at trial. Garcia, *et. al.* argue that the statements should be excluded under FED. R. EVID. 408 because they were made during the course of compromise negotiations. The Court does not see any evidence to support this position. It appears that the statements were made as a report to Allstate Insurance, rather than during the course of settling a disputed claim. Courts have looked to the circumstances of the conversations to determine whether statements were given during the course of compromise negotiations. For example, in *EEOC v. Gear Petroleum*, the Tenth Circuit held that a defendant's letters describing alleged discrimination, were not admissible in age discrimination suit. 948 F.2d 1542, 1546 (10th Cir. 1991). The distinction is that in *Gear Petroleum*, the defendant was disputing its liability, while at the time Garcia made the statement, there was not yet a dispute of liability between Garcia and Allstate. Likewise, in *Olin v. Insurance Co. of North America*, a district court held that discussion between an insurer and an insured party were compromise negotiations when the insurer had initially denied coverage and

outside counsel had been retained. 603 F. Supp. 445 (S.D.N.Y. 1985). In the present case, there appears to have been no dispute of liability at the time Garcia made her statements to Allstate, as was present in *Olin*. Unlike, *Olin*, Garcia was merely providing a preliminary report to determine the validity of her claim. Allstate Insurance had not yet taken a position on the validity of her claim, but was merely conducting a factual investigation.

BNSF has raised practical concerns that in order to introduce the statements, the fact that Garcia was insured must also be introduced. According to BNSF, it would be difficult to explain these recorded statements without revealing that they were made to an insurance agent. The Court agrees with BNSF practical concerns. Generally, if a statement made to an insurance company contains admissible evidence, but includes an objectionable reference to insurance, the whole statement will often be admitted despite the resulting prejudice. *Weinstein's Federal Evidence* § 411.05[2], *see also Arnold's Hofbrau, Inc. v. George Hyman Constr.*, 480 F.2d 1145, 1150-51 (D.C. Cir. 1973) (party not prejudiced when fact of insurance could not have been concealed from jury, limiting instructions were given, and jurors found against all defendants). However, if the witnesses's testimony is clear without revealing the existence of insurance, or if the reference to insurance can easily be deleted from documentary evidence, disclosure is unnecessary and should be avoided. *Weinstein's Federal Evidence* § 411.05[3], *see also Jamison v. A.M. Bryers Co.*, 330 F.2d 657, 661 (3rd Cir. 1964). Courts have permitted limited reference to insurance companies in explaining the context of an insured statements. For example, in *Zanetti Bus Lines v. Hurd*, the Tenth Circuit found that no reversible error had been committed where an witness who was being cross-examined about prior statements of the party opponent stated that the statements had been made to "some insurance company." 320 F.2d 123, 129

(1963). In *Rios v. Bigler*, the Tenth Circuit again held that a limited reference to insurance did not consitute reversible error. 67 F.3d 1543 (1995). The Court believes that the probative value of the evidence outweighs any possible prejudice. By explaining the context of the statements, the jury will have a clearer understanding of why Garcia was making these statements. It would be confusing and misleading to leave the jury speculating about the source of these statements, for example, whether the statements were made to a law enforcement investigator, an investigating attorney, or a supportive neighbor. Given the context that Garcia was explaining to her own insurer how the accident arose, the statements are clearer and more understandable.

The Court is mindful, however, that this ruling could open the door for evidence of insurance payments or to argue that Allstate determined that Garcia was liable for the collision. The parties have asked for guidance as to whether BNSF can elicit testimony or argue that the Estates were pursuing an insurance claim against Garcia. The Court finds that such evidence would be impermissible evidence of insurance under FED. R. EVID. 411, inadmissable evidence relating to an insurance settlement under FED. R. EVID. 408, and excludable as unduly prejudicial evidence under FED. R. EVID. 403. It is sufficient that the statements are explained in their context, as statements given to an insurance company within the days following the accident. BNSF cannot argue that Chadwick or the Estates were pursuing an insurance claim against Garcia, that Garcia's statements were made in the context of an insurance claim, or that Allstate determined she was liable. As an initial matter, the Court does not agree that Garcia's statements were made in the context of the Estates pursuing an insurance claim against her. Furthermore, the evidence of the Estates pursuing a claim against Garcia, is inadmissable under FED. R. EVID. 408, which precludes evidence of settlement or compromise negotiations to prove

14

liability. By arguing that the Estates were pursuing a claim against Garcia, BNSF treads too closely to the prohibitions of FED. R. EVID. 408. Such evidence is likewise unduly prejudicial pursuant to FED. R. EVID. 403.

In addition to the statements made by Garcia, BNSF seeks to introduce evidence of a release of claims signed between Garcia and Allstate, in which Garcia agreed to forego any claims in exchange for a monetary settlement. BNSF cites to *Dugan v. EMS Helicopters*, in which the Tenth Circuit held that the trial court committed reversible error by refusing to allow evidence of a previous negligence claim filed by the plaintiff which was contrary to the plaintiff's position at trial. 915 F.2d 1428 (10th Cir. 1990). In *Dugan*, personal representatives of the estates of helicopter passengers killed in a helicopter crash filed a negligence claim against the helicopter manufacturer, asserting that the manufacturer caused the action. Later, the same plaintiffs filed a negligence claim against the helicopter owner and operator, asserting that they had caused the crash. The Tenth Circuit held that evidence of the prior claims should have been admitted on the grounds that,

> "it is factually inconsistent with the position plaintiffs pursued in this case and therefore constitutes an admission against interest pursuant to FED. R. EVID. 801(d)(2). Further, it directly contradicts plaintiff's prior statements and therefore may be introduced for its impeachment value." *Id* at 1434.

Although this Court appreciates that *Dugan* requires the admission of evidence of contradictory positions, there is nothing in *Dugan* requiring a court to introduce such evidence in violation of other evidentiary prohibitions. In contrast to the claims in *Dugan*, the release signed by Garcia constitutes a settlement agreement, and therefore is barred by FED. R. EVID. 408, as both substantive evidence of Garcia's fault and as impeachment evidence to rebut Garcia's contention that she is not at fault. On this ground, the release of claims signed by Garcia is excluded.

15

## CONCLUSION

For the above stated reasons, the Court hereby holds that:

BNSF's Third Motion in Limine **[Doc. No. 166]** is well taken and will be **GRANTED**;

BNSF's Fourth Motion in Limine **[Doc. No. 251]** is well taken and will be **GRANTED**;

BNSF's Fifth Motion in Limine **[Doc. No. 253]** is well taken and will be **GRANTED**;

BNSF's Sixth Motion in Limine **[Doc. No. 255]** is not well taken and will be **DENIED**;

BNSF's Seventh Motion in Limine **[Doc. No. 257]** is not well taken and will be **DENIED**; and, Garcia, *et. al.*'s First Motion in Limine **[Doc. No. 148]** is well taken in part and will be **GRANTED IN PART** and **DENIED IN PART**.

MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE

Attorneys for Plaintiff BNSF
Clifford Atkinson
John Thal

Attorneys for Defendants / Plaintiffs-In-Intervention
Jim Branch
Brian Branch
Felicia Weingartner

Attorney for Third-Party Defendant
Gordon McCulloch